**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DERRICK VAUGHN,

        Plaintiff,

v.                                                                                            CASE NO. 2:12-cv-13934

INTERNATIONAL PAPER COMPANY and            HON. MARIANNE O. BATTANI
RETIREMENT PLAN OF
INTERNATIONAL PAPER COMPANY,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD, DENYING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, AND
<u>AFFIRMING THE DECISION OF THE PLAN ADMINISTRATOR</u>**

This matter is before the Court on the parties' cross-motions for judgment on the administrative record. (Docs. 14, 15). Plaintiff Derrick Vaughn filed the instant action for judicial review of Defendant International Paper Company's ("IPC") denial of his application for long-term disability benefits under an employee benefit plan established pursuant to the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 *et seq*. Vaughn argues that IPC's denial of his claim was arbitrary and capricious because several treating physicians found him to be permanently disabled. IPC argues Vaughn failed to meet his burden of establishing disability and that the significant medical evidence in the record demonstrates that Vaughn could perform other jobs in the national economy. The matter is fully briefed; therefore, the Court finds that oral argument will not aid in the resolution of this matter. <u>See</u> E.D. Mich. L.R. 7.1(f)(2). For

the reasons stated below, Plaintiff's motion is **DENIED**, Defendants' motion is **GRANTED**, and the decision denying benefits is **AFFIRMED**.

I.   **STATEMENT OF FACTS**

   **A.   Background**

Plaintiff Derrick Vaughn was employed as a "warehouse worker" for Defendant IPC from May 12, 1997, to April 15, 2010. As an IPC employee, Vaughn participated in the Retirement Plan ("the Plan"), and was therefore eligible to apply for disability retirement benefits. Under the Plan, in order to receive long-term disability benefits, the applicant must satisfy the Plan's definition of "disability/disabled," set forth as:

> total disability which is a medically determinable physical or mental impairment or diagnosed terminal illness which renders the Participant incapable of performing any occupation or employment for which the Participant is qualified by education, training or experience and which is likely to be permanent during the remainder of the Participant's life . . . .

(Doc 13, Ex. 2, p. 93). The burden of establishing disability lies with the claimant.

In 2009, Vaughn injured his back while lifting a 45-50 pound box. (Doc. 13, Ex. 3, p. 39). He was placed on modified duty until the last day of his employment in April 2010. Shortly thereafter, on account of chronic neck and back pain, Vaughn applied for and received short-term sickness and accident benefits through October 14, 2010. On October 27, 2010, IPC notified Vaughn that he may be eligible for long-term disability benefits under the Plan and sent him the application materials. (Doc. 13, Ex. 3, p. 161-177). Vaughn completed the materials in January 2011. He listed his treating physician as Dr. Raj Bothra, a pain specialist, and identified his disabling conditions as L3-L5 herniated discs and chronic cervical and lumbar pain. Vaughn also submitted numerous other medical records and forms. After review, IPC denied his claim by letter

on March 22, 2011, citing Vaughn's failure to satisfy the "any occupation" standard. (Doc. 13, Ex. 3, p. 266-268). Vaughn appealed, but IPC affirmed its decision.

### B. Medical Record

In 2007, Vaughn underwent a C2-7 spinal fusion because of chronic neck and back pain. He missed eight months of work and later returned to work with restrictions on lifting. Soon thereafter, an MRI indicated degenerative changes with a L4-5 disc bulge and neuroforaminal encroachment. Beginning in 2009, Vaughn's job added strain to his neck and back. In December 2009, a CT scan revealed left-sided L4-5 prolapes and Dr. Peter Nefey diagnosed Vaughn with L2-3 disc level herniation.

On May 22, 2010, Dr. Eric Backos administered an EMG on Vaughn's upper extremities suggesting C5-6 radiculopathy, L5-S1 radiculopathy, and carpal tunnel syndrome. Vaughn received treatment from Dr. Backos and Dr. Bothra during this time. In August 2010, Michigan Pain Consultants diagnosed Vaughn with lumbar radiculopathy and recommended a left L5 transforaminal epidural steroid injection. Subsequently, Dr. Bothra injected Vaughn with steroids for his pain on August 27, 2010, and September 24, 2010. In October 2010, Vaughn underwent a rhizotomy procedure with biplanar fluoroscopy along with a transforaminal selective nerve root block in November 2010. On December 23, 2010, Dr. Backos performed another EMG indicating symptoms consistent with L2 radiculopathy and L5-S1 radiculopathy.

In September 2010, Dr. Victor Gordon conducted an independent medical examination of Vaughn. (Doc. 13, Ex. 3, p. 154-60). In his report, Dr. Gordon noted limited extension and rotation of the cervical spine. Vaughn experienced pain when pushed into the extreme ranges of movement. Vaughn demonstrated full extension of

the lumbar spine but limitations in flexion. Dr. Gordon noted no signs of spondylolisthesis (displacement of vertebral column). Dr. Gordon noted that Vaughn currently worked nearly full time as a chef, which required him to lift upwards of twenty pounds. Dr. Gordon recommended that Vaughn avoid lifting excess of ten to fifteen pounds (two to three times per hour), avoid frequent bending and twisting movements, and that he "should be given the option to sit or stand, depending on pain level." (Id. at 159).

Dr. Howard Choi, board certified in physical medicine and rehabilitation, conducted an independent medical review at the request of IPC in October 2010. Dr. Choi concluded that Vaughn was not disabled and could still perform the duties of his job as a warehouse worker. (Doc. 13, Ex. 3, p. 260). He stated that Vaughn was able to return to full-time work after his fusion surgery in 2007 and that the "clinical findings, overall, would not support that [Vaughn's] ability to function in his regular occupation as of 4/16/10 and forwards had been negatively impacted." (Id.) Dr. Choi also noted that Vaughn was able to independently perform his daily living activities and even played golf while he was working full-time as a chef, reportedly lifting up to twenty pounds. (Id.) There was also a lack of documentation regarding the back injury Vaughn suffered in 2009. In addition, Dr. Choi concluded that Vaughn had "intact neurological function," and that there was "no evidence of radiculopathy."

Dr. Choi updated his determination after Vaughn appealed the initial denial of his claim. Vaughn did not submit any additional evidence to support his appeal. Notably, Dr. Choi spoke with Dr. Bothra about Vaughn's condition, but was never able to reach

Dr. Gordon.  Ultimately, Dr. Choi found Vaughn not disabled under the "any occupation" standard pursuant to the Plan.  (Doc. 13, Ex. 3, p. 46-48).

Another independent medical review was performed by Dr. Glenn Babus, an anesthesiology and pain management specialist.  Dr. Babus also concluded that Vaughn was not disabled.  He noted that "[t]here are some findings on the diagnostic testing of a CT that showed some small herniations and disc bulges."  (Doc. 13, Ex.3, p. 263).  However, he also found "no documentation showing neurological deficits or ranges of motion."  (Id.)  In addition, other than Vaughn's complaints of pain, there existed "no quantitative assessment like visual analog scores or percentage to show severe pain."  (Id.)

In support of Vaughn's claim, Dr. Bothra submitted a Functional Assessment Form dated January 4, 2011.  (Doc. 13, Ex. 3, p. 226-27, 231-33).  In it, Dr. Bothra opined that Vaughn could stand/walk or sit less than an hour during an eight hour work day.  (Id. at 231).  However, on another page of the Assessment, he indicated that Vaughn can sit most of the workday and may stand for occasional short periods.  (Id. at 227).  He also stated that Vaughn could not lift anything over five pounds and should not bend or twist.  (Id.)  In addition, he noted that Vaughn had a "severe limitation of functional capacity" and was "capable of minimal (sedentary activity)."  (Id. at 229). Last, Dr. Bothra diagnosed Vaughn with lumbar and cervical radiculopathy, a condition that was likely to be permanent.

On May, 2011, Zenia Andrews performed a transferable skills analysis ("TSA"). The TSA identified three positions that Vaughn could perform given his medical

5

restrictions and limitations, education, and work history: sorter, surveillance-system monitor, and dispatcher. (Doc. 13, Ex, 3, p. 43).

## II. STANDARD OF REVIEW

Motions for judgment on the administrative record in an ERISA action are not akin to motions for summary judgment under Fed. R. Civ. P. 56(a). See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 618 (6th Cir. 1998) ("This standard of review does not neatly fit under either Rule 52 or Rule 56, but is a specially fashioned rule designed to carry out Congress's intent under ERISA."). Accordingly, a district court reviews an ERISA plan administrator's denial of benefits *de novo* unless the plan grants the administrator discretionary authority to determine eligibility for benefits. Cox v. Standard Ins. Co., 585 F.3d 295, 299 (6th Cir. 2009) (citing Gismondi v. United Techs. Corp., 408 F.3d 295, 298 (6th Cir. 2005)). If the plan gives the administrator discretionary authority, a court applies the highly deferential "arbitrary and capricious" standard of review. Id.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Schwalm v. Guardian Life Ins. Co. of America, 626 F.3d 299, 308 (6th Cir. 2010) (internal quotation marks omitted) (quoting Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir. 2003)). Even when a claimant has introduced evidence that might be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits because of the plan's provisions, then the decision is neither arbitrary nor capricious. Id. (citing Williams v. Int'l Paper Co., 227

6

F.3d 706, 712 (6th Cir. 2000)). Therefore, a reviewing court must uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

Vaughn does not dispute that the Plan grants IPC the discretion to determine benefits eligibility. Indeed, the Plan grants IPC the "discretionary power and discretionary authority . . . to interpret the Plan" and "to determine the amount of benefits which shall be payable to any person in accordance with the . . . Plan." (Doc. 13, Ex. 2, p.66-67). Consequently, IPC's decision to deny benefits will be analyzed under the deferential arbitrary and capricious standard.

### III. ANALYSIS

Vaughn argues that IPC's decision to deny benefits is arbitrary and capricious because he is disabled from performing the material duties of his job and that IPC's independent medical examiners found sufficient evidence of chronic neck and back pain to support a finding of disability. IPC asserts that there is sufficient evidence that Vaughn can perform sedentary work and failed to meet his burden under the Plan. After reviewing the evidence, the Court finds Vaughn failed to demonstrate that he cannot perform at least sedentary work.

Under the Plan, Vaughn is required to establish that he is permanently disabled and incapable of performing any occupation for which he is qualified. Although Vaughn experiences chronic neck and back pain, none of the physicians concluded that Vaughn could not perform at least sedentary work. Dr. Choi indicated that the clinical findings did not prevent Vaughn from continuing his normal occupation. In addition, Dr. Choi

7

and Dr. Gordon noted that Vaughn found work as a chef, lifting upwards of twenty pounds. Vaughn self-reported that he continued to play golf, and both physicians noted that Vaughn could perform his daily activities of living. Dr. Gordon recommended moderate restrictions on lifting and also found that Vaughn should be permitted to sit and stand depending on his level of pain. However, Dr. Gordon never concluded that Vaughn was disabled from performing "any occupation," and Dr. Babus doubted the severity of Vaughn's pain. Consequently, based on the given limitations, the TSA indicated several sedentary occupations that Vaughn could perform.

Contrary to Vaughn's argument, Dr. Bothra did not find him disabled as defined in the Plan. Dr. Bothra's report contained inconsistencies regarding Vaughn's ability to sit and stand. The report is also inconsistent with the findings of Dr. Choi and Dr. Gordon, both of whom recommended less severe restrictions. Most notably, although Dr. Bothra found a severe limitation of functional capacity, nowhere did Dr. Bothra state that Vaughn could not perform minimal sedentary work. Regardless, IPC reasonably concluded that Vaughn was not disabled under the Plan based on substantial evidence from the other physicians.

In sum, IPC's decision to deny benefits is not arbitrary and capricious. IPC considered all of the medical evidence in the record and reached a reasonable decision. None of the physicians concluded that Vaughn could not perform sedentary work. Indeed, Vaughn failed to demonstrate that he could not perform "any occupation" as defined in the Plan, and IPC identified at least three jobs in the national economy that he is capable of performing. Although Vaughn demonstrated some degree of restricted movement and pain in his neck and back, he failed to meet the burden set out in the

8

Plan. Consequently, IPC's decision is the result of a deliberate, principled reasoning process and supported by substantial evidence in the record.

## IV. CONCLUSION

Accordingly, Defendants' motion is **GRANTED**, Plaintiff's motion is **DENIED**, and the decision of the plan administrator is **AFFIRMED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATE: December 23, 2013

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt

Case Manager